POWELL v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. November 15, 1901.)

1. MUNICIPAL CORPORATIONS—CIVIL SERVICE COMMISSION—RULES—CONSTRUCTION—DRAFTSMAN.

Laws 1899, c. 370, authorizes the municipal civil service commission to make rules, which by section 6 shall have the force and effect of law. Section 11 requires that the positions in the classified service shall be arranged in four classes, one of which is the competitive class. Rule 37 of the commission reads as follows: "Positions in the competitive class, are graded according to the fixed limit of compensation as follows: Fourth grade. * * * Draughtsman. Annual compensation of more than $1,320, but not more than $1,800." *Held*, that such rule was a mere classification of employés according to their salary, and not a rule fixing the salary, or a declaration that every person holding the position of draftsman should receive a salary between $1,320 and $1,800, so as to enable such an employé to collect $1,320 per annum from the city.

2. SAME—DEPARTMENT OF PUBLIC IMPROVEMENTS—POWERS.

Under Greater New York Charter, § 1543, providing that the number and duties of employés of all departments, with their respective salaries, shall be such as the heads of the respective departments shall designate and approve, the power to fix the salary of a draftsman in the department of public improvements is in the head of that department.

3. SAME—STATUTES—REPEALING CLAUSE—SCOPE.

Laws 1899, c. 370, § 29, consisting of merely general words of repeal, and mentioning salaries of city employés only incidentally to classification, does not destroy the salary scheme of Greater New York Charter, § 1543.

Appeal from special term, New York county.

Action by Charles U. Powell against the city of New York. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

William J. Carr, for appellant.

W. J. Foster, for respondent.

GOODRICH, P. J. The plaintiff, on January 31, 1899, passed a civil service examination for, and was duly appointed to, the position of topographical draftsman in the department of public improvements of the city of New York, at a salary of $900 per annum. Since that time he has performed his duties as such draftsman and received and receipted in full for his salary at the rate stated. He duly presented a claim to the comptroller of the city of New York for the difference between his salary at the rate of $900 and what it would be at the rate of $1,320, and, the claim being refused, commenced this action. The action was tried at Queens special term. The court rendered a short decision and directed judgment for the plaintiff, and the city appeals.

The White act (chapter 370, Laws 1899) authorizes the municipal civil service commission of the city of New York to make rules which, by section 6, "shall have the force and effect of law." Section 11 requires that the positions in the classified service of the city shall be arranged in four classes, one of which is the com-

petitive class. Rule 37, promulgated by the municipal civil service commission in pursuance of the act, contains the following: "Positions in the competitive class are graded according to the fixed limit of compensation as follows. * * * Fourth grade. * * * Draughtsman. Annual compensation of more than $1,320, but not more than $1,800." The defendant contends that, under section 1543 of the Greater New York charter, the "power to fix the minimum salary of the plaintiff was in the board of public improvements, and not in the municipal civil service commission"; while the plaintiff insists that "the rules of the civil service commission of the city of New York, having been approved by the state civil service commission and the mayor of the defendant, have the force and effect of law," and that "the minimum and maximum amounts of compensation to be paid to persons holding positions in the grade in which respondent's position is classified, having been fixed and established by law, he is entitled to receive at least the minimum amount for his services." In other words, the question involved in this appeal is whether the head of a public department, or the municipal civil service commission, has the power to fix the minimum salary of public employés. I do not think that it was the intention of the municipal civil service commissioners, in rule 37, to fix the salaries, and I am clear in my opinion that they did not thereby fix them. The rule was a mere classification. It says that "positions in the competitive class are graded according to the fixed limit of compensation," and makes one of these grades a fourth grade, defining it as composed of persons, draftsmen being included, having "an annual compensation of more than $1,320, but not more than $1,800." This is by no means a rule fixing the salary, or a declaration that every person holding the position of draftsman shall receive a salary between $1,320 and $1,800. It is merely a classification of employés according to the amount of their salaries. This is in accordance with the views expressed in People v. Knox, 58 App. Div. 541, 69 N. Y. Supp. 602, affirmed without opinion, 167 N. Y. 620, 60 N. E. 1118, where it was said, Mr. Justice Rumsey writing (pages 543, 544, and 546, 58 App. Div., and page 604, 69 N. Y. Supp.): "By section 10 of the White act the civil service commissioners were called upon to prescribe rules for the classification of the offices, places, and employments, but not the salaries, in the classified service. * * * There is nothing in the law which I can find that authorizes the commissioners to consider the salary to be paid. All they are to classify is the position." On the other hand, section 1543 of the Greater New York charter provides that the number and duties of employés in all departments, "with their respective salaries * * * shall be such as the heads of the respective departments shall designate and approve; but subject, also, to the revision of the board of estimate and apportionment." Here is a clear and consistent devolution of power upon the several departments where it naturally belongs.

I find nothing in the repealing section of the White act which repeals section 1543 of the charter, or transfers to the municipal civil service commission the power conferred upon heads of depart-

ments by that section. Certainly we cannot hold that it was the intention of the legislature, by the general words of repeal in section 29, to destroy the whole salary scheme of the charter, unless the language is specific or unequivocal. The repealing clause of the White act must be considered as relating only to subjects cognate with its own subject. The salaries of employés of the city are only mentioned incidentally to classification, and not otherwise. Consequently it would be a stretch of judicial interpretation to hold that the White act repeals section 1543 of the charter. I am clearly of opinion that it was not intended as such repeal. It follows that the salary of the plaintiff remains at $900, as it was fixed by the head of the department at the time of his appointment, and that he cannot maintain this action.

The judgment should be reversed, and, as the situation cannot be changed by evidence, judgment must be ordered for the defendant, with costs. All concur.